GILBERT S. HARDIE AND ISABEL C. HARDIE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hardie v. Commissioner
Docket No. 5530-70.
United States Tax Court
T.C. Memo 1973-127; 1973 Tax Ct. Memo LEXIS 162; 32 T.C.M. (CCH) 549; T.C.M. (RIA) 73127; June 12, 1973, Filed *162 Held, the amount of a charitable contribution deduction determined; held, further, petitioners are not entitled to deductions for travel expense, automobile expense and depreciation in excess of the amounts allowed by respondent. Gilbert S. Hardie, pro se. Richard W. Janes, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies of $211.54 and $2,004.87 in the income tax of petitioners for 1964 and 1965, respectively. Several issues have been settled by the parties; however, the following issues remain for decision: 2 (1) Whether respondent correctly disallowed any charitable contribution deduction in excess of $1,000 attributable to petitioners' donation of an undivided one-half interest in a house to the Salvation Army; (2) Whether *163 petitioners are entitled to automobile expense deductions in excess of the amounts allowed by respondent; (3) Whether petitioners are entitled to deduct travel expenses in excess of the amounts allowed by respondent; and (4) Whether petitioners are entitled to depreciation deductions in excess of the amounts allowed by respondent. FINDINGS OF FACT Some of the facts have been stipulated and they are so found. Petitioners are Gilbert S. Hardie and Isabel C. Hardie, husband and wife, who at all relevant times have lived in San Diego, Calif. For 1964 and 1965 petitioners filed joint income tax returns with the district director of internal revenue, Los Angeles, Calif.
At all relevant times Gilbert S. Hardie (Dr. Hardie) has been a self-employed physician practicing in San Diego, Calif. Isabel C. Hardie (Mrs. Hardie) was actively engaged during the years in issue in investing in vacant real estate and residential rental properties. The bulk of these investments were 3 in low cost rental housing in neighborhoods with a high concentration of poor people. On August 25, 1964, petitioners purchased a house and lot at a tax sale conducted by the city of San Diego. The *164 consideration was the satisfaction of a lien dated February 19, 1960, for street improvement bonds plus the payment of all delinquent and current taxes as follows: Street bond assessment
$333.36
1962-64 property taxes
387.76
1965 property tax (current)
190.31
Total
$911.43
After the expiration of the one-year statutory redemption period, Mrs. Hardie was granted a City Treasurer's Deed on August 31, 1965. This deed was recorded on September 22, 1965. The vacant house had been subjected to considerable vandalization. On August 5, 1963, it had been appraised at $1,000 as an asset of the Louis Bard estate. The house had access to the street only through an unrecorded prescriptive easement over the adjoining lot. It was located in a disadvantaged neighborhood. In October 1965 Mrs. Hardie hired two carpenters to repair the worst of the damage and incurred expenses as follows: Valdez and Benito (carpenters)
$1,329.06
Lumber and supplies
249.23
Plumbing
175.00
Electrical work
170.00
Windows, etc.
123.40
Roof work
150.00
Miscellaneous
51.69
Total
$2,248.38 4 Mrs. Hardie did not try to rent the property but decided to contribute *165 it to the Door of Hope, a Salvation Army facility for unwed mothers. On November 17, 1965, Mrs. Hardie granted an undivided one-half interest in this property to the Salvation Army. The remaining half-interest was granted on January 10, 1966. On June 20, 1966, the Salvation Army received a written appraisal on this property from Mid City Realtors which put its value as being between $2,000 and $4,000. On August 15, 1966, it sold the house and lot to one Raldon Williams for $2,000. Williams, who was a realtor, had previously purchased the almost identical property next door from Silvergate Savings & Loan Association for about $5,000. Silvergate had acquired the property in a foreclosure which had eliminated an existing second trust deed. The Salvation Army house was rented soon after purchase by Williams for $80 per month. Petitioners claimed a total of $4,678.25 as automobile expenses for 1964 and $4,003.39 for 1965. Of such amounts claimed, the sums of $867.07 and $616.05 were disallowed for 1964 and 1965, respectively. In August and September 1965 petitioners took a vacation trip of about a month to Panama, Venezuela, Curacao, the Virgin Islands and Miami. While *166 en route to Venezuela to visit their son, who was working in the Peace Corps, petitioners stopped in Panama for 5 three days. During that time Dr. Hardie visited Dr. I. J. Strumpf who was in charge of the Obstetrics-Gynecology Department at Gorgas Hospital in the Canal Zone. The purpose of Dr. Hardie's visit with Dr. Strumpf was to observe the operations of Dr. Strumpf's hospital. The statutory notice disallowed $683.42 [1] of $1,431.18 claimed by petitioners for travel expense with respect to their 1965 South American vacation. The effect of the disallowance of $683.42 is to allow approximately 50 percent of Dr. Hardie's total travel expenses. None of Mrs. Hardie's vacation expenses had been claimed. The statutory notice determined that petitioners had overstated depreciation for 1965 on various rental properties in the net total of $362.78. *167 OPINION Petitioners have contested a number of adjustments made by respondent for 1964 and 1965. 6 In 1964 Mrs. Hardie purchased a house for $911.43 in a tax sale conducted by the city of San Diego. In October 1965 Mrs. Hardie spent over $2,000 to put the house in rentable condition. Rather than renting the house Mrs. Hardie gave it to the Salvation Army, an undivided one-half interest in 1965 and the remaining interest in 1966. Petitioners, claiming a fair market value for the house of $12,500, deducted $6,250 on their 1965 return as a charitable contribution under section 170. [2]
Respondent determined that the value of the house was $2,000, which is the price received by the Salvation Army when it sold the house to a realtor in August 1966. We believe that respondent's evaluation is too low because the Salvation Army did not use the house and permitted it to become dilapidated and vandalized during the period of its ownership. From all evidence in the record we believe that the house was worth $5,000 when given to the Salvation Army and that petitioners are thereby entitled *168 to a contribution deduction of $2,500 for 1965. Petitioners claim that Mrs. Hardie's rental business required a great deal of driving on her part and that their cars were costly to operate. While we believe these claims to be true generally, petitioners did not present any evidence to support a greater deduction than has been allowed by 7 respondent. Petitioners did not present records of the business miles driven by them, nor is the record clear as to the number of cars owned by them at any time. We also note that none of the rental properties owned by Mrs. Hardie were located outside of San Diego. The deductions allowed by respondent are the equivalent of 586 business miles per week at $0.125 per mile for 1964 not counting any time taken for vacation or sickness, and 521 such miles in 1965 not counting any vacation or sick time. In 1965 the record indicates petitioners took at least a one-month's vacation. Petitioners have not shown that a greater number of business miles were driven or that greater costs per mile were incurred. Dr. Hardie has demonstrated that the primary purpose of his trip to Panama on his vacation trip was to observe Dr. Strumpf's hospital for *169 the benefit of his own practice; however, he has not shown that the cost of his visit to Panama exceeded the $747.76 allowed by respondent as a business travel expense. Accordingly, we sustain respondent's disallowance of any travel expense deduction in excess of that amount. Petitioners did not present any evidence or arguments contesting respondent's recomputation of certain depreciation deductions. Accordingly, we hold that petitioners are not entitled to depreciation deductions in excess of the amount allowed by respondent. Decision will be entered under Rule 50. Footnotes
1. The parties stipulated that $803.42 of travel expense was disallowed; however, in the notice of deficiency respondent only disallowed $683.42, which figure was stated in both the petition and the answer. We shall follow the statutory notice and the pleadings of the party rather than the stipulation. As a general comment, the record in this case is confusing to say the least. Certain items were included in the stipulation which had earlier been conceded. Petitioners signed the stipulation but later indicated that there were errors in it and so on. At the beginning of the trial it appeared that petitioners had not had ample time to review the proposed stipulation but stated that they did not need more time when asked by the Court. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended. ↩